<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                      :
**JUSTINA NIEVES,**                   :
                                      :  CIVIL ACTION NO.: 04-2865 (WJM)
            **Plaintiff,**            :
                                      :
v.                                    :
                                      :  OPINION
**COMMISSIONER OF SOCIAL**            :
**SECURITY,**                         :
                                      :
            **Defendant.**            :
_____:

Joel Solow
Freeman & Bass, P.A.
24 Commerce Street
Newark, NJ 07102

*Attorney for Plaintiff*

Marla Piazza Siegel
Assistant U.S. Attorney
26 Federal Plaza
Room 3904
New York, NY 10278

*Attorney for Defendant*

**MARTINI, U.S.D.J.:**

Plaintiff Justina Nieves brings this action pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3) of the Social Security Act, seeking review of the final determination by the Commissioner of Social Security ("Commissioner") which denied Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The Commissioner opposes. For the reasons articulated below, the Commissioner's decision is **AFFIRMED.**

## BACKGROUND

Plaintiff was born on June 16, 1954 in Puerto Rico. She went to school for eight years in Puerto Rico. Her previous employment involved working in three different shoe factories over a period of about ten years. Plaintiff allegedly became disabled as of March 9, 2000 due to the loss of vision in her left eye causing her to become dizzy and to not be able to sleep. (Tr. at 189).[1] On May 13, 2002, Plaintiff filed an application for DIB and SSI benefits relying on that alleged disability. The application was denied initially and on reconsideration. Thereafter, Plaintiff requested a hearing by an administrative law judge ("ALJ").

A hearing was held on February 6, 2004 before ALJ Richard L. DeSteno. On April 8, 2004, the ALJ issued a decision denying Plaintiff's application. After evaluating Plaintiff's medical records in detail, the ALJ determined that although Plaintiff had a severe impairment, she was not disabled. Ultimately, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, including her prior work as a shoe factory worker.

Plaintiff sought review by the Appeals Council, and on May 20, 2004, the Appeals Council denied her request for review. Plaintiff then timely appealed to this Court.

## STANDARD OF REVIEW

The district court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings if they are supported by substantial evidence. *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which,

---

[1] The designation "Tr." refers to the administrative record.

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Secretary of Health & Human Servs.,* 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance"). Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004).

## DISCUSSION

In reaching the decision to deny benefits to Plaintiff, the ALJ undertook the multi-step sequential evaluation as required to determine whether Plaintiff was disabled and found as follows: (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability; (2) Plaintiff's impairment was "severe," but did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (3) Plaintiff's subjective complaints of pain were not entirely credible in light of the evidence of record; (4) Plaintiff retained the residual functional capacity to perform light work, including her past relevant work associated with her shoe factory job; and (5) Plaintiff did not suffer from a disability as defined in the Social Security Act.

Plaintiff argues that the ALJ's decision is erroneous for three reasons. First, Plaintiff alleges that the ALJ erred in his step three analysis by not fully developing the record. Second, Plaintiff alleges that the ALJ erred in determining that Plaintiff's subjective complaints of pain

were not fully credible.  And third, Plaintiff alleges that the ALJ erred by not calling a vocational expert in step four of the analysis to determine if Plaintiff could work in the national economy.

I.      **ALJ's Duty to Call a Medical Expert**

Plaintiff argues that the ALJ did not develop the record fully when determining that Plaintiff did not meet the requirements of § 2.04 of the Listing of Impairments, which led to the erroneous determination that Plaintiff was not disabled.  This Court disagrees.  The ALJ found that Plaintiff did not meet or equal the medical listing requirements listed in § 2.04 and that determination is supported by substantial evidence.[2]

The ALJ is duty bound to ensure that a claimant's complete medical history is developed on the record, before finding that the claimant is not disabled.  20 C.F.R. §§ 404.1512(d), 416.912(d).  If the evidence before the Commissioner does not fully develop the record, the ALJ must obtain additional evidence to determine whether that claimant is disabled.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  In addition, the ALJ must obtain an updated medical opinion from a medical expert "when additional medical evidence is received that in the opinion of the [ALJ] ... may change the State agency medical ... consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."  *Diehl v. Barnhart,* 357 F. Supp. 2d 804, 815 (E.D. Pa. 2005).  Otherwise, the decision to call a medical expert is left to the discretion of the ALJ.  20 C.F.R. § 404.1527(f)(2)(iii).

---

[2] Plaintiff was also found not to have met or equaled the requirements of §§ 9.08, 2.02, and 2.03 of the Listings of Impairments.  Plaintiff does not contest these findings on appeal, and therefore they will not be addressed.

The record before the ALJ did not require that he call a medical expert. The record was sufficiently developed, and there was no contradictory evidence presented. In order to be considered disabled, a claimant must furnish relevant medical evidence, or other evidence, demonstrating the existence of a disability. *See* 42 U.S.C. § 423(d)(5)(A). In this case, Plaintiff produced no medical evidence showing the existence of a vision disability that would allow her to meet the requirements of any of the listed impairments. The medical criteria used to determine if Plaintiff meets or equals § 2.04 is whether Plaintiff's visual efficiency in her better eye after best correction is 20% or less. It is clear on the face of the evidence that Plaintiff did not meet this requirement. The medical evidence presented shows that Plaintiff had adequate eyesight out of her right eye to continue working. The Plaintiff's physician, Dr. Thomas Materna, examined Plaintiff and found that she had at best 20/30 vision in her right eye and 20/200 vision in her left eye. In addition, and more importantly, the State Agency consultant, Dr. Manley, found that Plaintiff's better eye, her right eye, had a visual efficiency of approximately 45%. Plaintiff was also examined by Dr. Kayserman, who reached the same conclusions as Dr. Materna.

Moreover, according to testimony given by the Plaintiff, she stated that she can see well sometimes and can see long distances well when wearing glasses. Plaintiff also stated that she was able to get dressed, shower and cook. She was able to leave the house with help and could go walking by herself on a good day. In addition, Plaintiff was still able to continue working one or two days a week after losing vision in her left eye. (Tr. at 189-95). Plaintiff was also found to have sufficient visual acuity to handle and work with any size objects, avoid workplace hazards, read normal size print and work with computers. Since Plaintiff proffered no contradictory medical evidence, the ALJ was under no obligation to deliberate further on the matter of

Plaintiff's purported disability, nor was he required to call a medical expert to provide more insight.

Plaintiff relies on *Maniaci v. Apfel,* 27 F. Supp. 2d 554 (E.D. Pa. 1998) for the proposition that an ALJ should consult with a medical expert when there is a question as to whether the claimant's impairment is equivalent to a listed impairment. A closer examination of *Maniaci,* however, reveals it inapplicability. In *Maniaci,* the court held that the ALJ did not fulfill her duty to develop the record because no orthopedic doctor was called in to testify as to claimant's orthopedic condition. Indeed*,* the ALJ did not receive any testimony from an orthopedist on the extent of Plaintiff's orthopedic injuries. *Id.* at 558. The only medical expert that testified was a cardiologist who kept his testimony limited to Plaintiff's heart condition. The facts of this case are distinguishable from *Maniaci.* Here, two of Plaintiff's own eye specialists examined her regarding her vision. Both doctors found that she had 20/30 vision with her right eye. State Agency medical consultants also reviewed her medical reports and found that she was able to see well out of her right eye and that she was able to participate in light work. Thus, in sharp contrast to *Maniaci,* here, the ALJ considered evidence from the appropriate specialists.

In sum, there was substantial evidence presented - medical reports from physicians, eye specialists, State agency consultants, and testimony from the Plaintiff. That evidence supports the ALJ's determination that Plaintiff was not disabled under step three. Accordingly, the ALJ did not err in not calling for a medical expert.

II.     **Evaluation of Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in determining that the Plaintiff's subjective complaints of pain were not fully credible.  She complained about extremely limited vision causing her to have dizzy spells and pain in her eye, rendering her unable to work.  Plaintiff asserts that all of her statements were consistent with each other and consistent with the medical evidence.  In addition, Plaintiff contends that the ALJ did not reference all of her statements in the record, therefore making the ALJ's determination inappropriate.

When a plaintiff claims that the ALJ failed to properly consider subjective complaints of pain, the Court must determine whether the ALJ considered all the evidence relevant to plaintiff's complaints of pain and whether that evidence so contradicts plaintiff's subjective complaints that the ALJ could discount plaintiff's testimony as not credible.  *Rush v. Apfel,* 2001 U.S. Dist. LEXIS 18247, *12-*13 (E.D. Pa. Nov. 7, 2001) (citing *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir. 1978)).  A plaintiff's complaints of pain must be supported by objective medical evidence.  *See Edwards v. Commissioner of Soc. Sec.*, 989 F. Supp. 657, 660 (D.N.J. 1998).  Furthermore, credibility determinations are particularly the province of the finder of fact, and the Court will not upset such determinations when supported by substantial evidence.  *See Duncan v. Sullivan,* 786 F. Supp. 466, 468 (E.D. Pa. 1992).

The ALJ did not glibly dismiss the Plaintiff's subjective complaints of pain; rather the ALJ dismissed Plaintiff's complaints only after evaluating them in conjunction with the medical evidence.  The ALJ took into consideration such matters as "(1) the nature, location, onset, duration, frequency, radiation and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness and adverse side-effects of any pain medication; (4) treatment,

other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities and work record." (Tr. at 19). Although the evidence showed that Plaintiff may have experienced some pain and concomitant limitations arising from her impairment, that pain was not so great as to interfere with her ability to perform her past relevant work. The ALJ considered that Plaintiff still maintained a range of daily activities. Plaintiff was able to care for her own personal needs, prepare daily meals, perform housework with assistance, and go shopping or attend church with company. (Tr. at 72-73, 194). According to Plaintiff's doctors, she did not have any physical limitations based on her diabetes, hypertension, and visual impairments. Plaintiff retained 20/30 vision in her right eye, which according to the report of Dr. Spitz, allowed her to handle and work with any size object, read normal size print and work with a computer. Thus, the objective medical evidence did not support the full extent of Plaintiff's complaints. Therefore, it was within the ALJ's discretion to grant less weight to Plaintiff's subjective complaints of pain. *See Edwards*, 989 F. Supp. at 660. Accordingly, the ALJ's determination that Plaintiff was not entirely credible is supported by substantial evidence.

### III.     ALJ's Duty to Call a Vocational Expert

Plaintiff argues that the ALJ erred by not calling a vocational expert in his step four analysis. According to Plaintiff, the ALJ lacked substantial evidence to determine if Plaintiff could find work in the national economy without calling a vocational expert. In this instance, the Court finds that Plaintiff conflates steps four and five in the Social Security analysis. The duty to call a vocational expert does not arise in step four. The ALJ does not look to determine if there are available jobs in the national economy until he gets to step five. *See* 20 C.F.R. § 404.1566;

20 C.F.R. § 416.966; *see also Walker v. Secretary of Health & Human Services*, 1987 U.S. Dist. LEXIS 6193, *15 (D.N.J. June 22, 1987). In this case, it was unnecessary to proceed to step five since the ALJ was able to determine, based on the evidence presented, that Plaintiff was still able to perform her past work.

When sufficient evidence exists, showing that a claimant can perform his or her past relevant work, the ALJ need not proceed to step five. The decision to call a vocational expert before step five is discretionary. 20 C.F.R. § 404.1560(b)(2); S.S.R. 00-4p (2000). Here, substantial evidence supports the ALJ's finding that a vocational expert was not needed. The ALJ relied on the medical evidence presented to determine that the Plaintiff was still able to perform her past work as an employee in a shoe factory. Dr. Manley, a State agency medical consultant, stated in his report that Plaintiff's residual functional capacity allowed her to perform the exertional demands of unskilled light work involving the lifting and carrying of objects weighing up to twenty pounds; frequent lifting and carrying of objects up to ten pounds; standing, walking and sitting down up to six hours during the course of an eight-hour workday; pushing and pulling arm and leg controls; and activity not involving exposure to dangerous machinery. Gordon Tuffin, of the Quality Review Branch of the Disability Determination Service, indicated that Plaintiff's past relevant work corresponds to that of a "Brusher", as listed in the Dictionary of Occupational Titles ("DOT"). Based on the above conclusions, the ALJ found that Plaintiff's residual functional capacity would allow her to perform the functional duties of a Brusher as described in the DOT.[3] Plaintiff presented no evidence suggesting that she

---

[3] Brusher is an unskilled occupation that requires only light exertion compatible with Plaintiff's residual functional capacity. A Brusher is identified as a person who cleans and polishes shoes by holding and turning shoes against revolving brushes and who stands and walks

was incapable of performing such work.  Buttressing the conclusion that Plaintiff has the residual functional capacity to perform the work, is the fact that Plaintiff's own doctors found she had no physical limitations because of her impairments.  Also, according to Dr. Spitz, Plaintiff had the visual acuity to avoid ordinary workshop hazards, work with a computer and handle or work with any size objects.  Therefore, there was substantial evidence supporting the ALJ's decision that Plaintiff was able to perform her past relevant work.

Plaintiff cites *Sykes v. Apfel,* 228 F.3d 259 (3d Cir. 2000) for the proposition that "[t]he ALJ has the authority to call a vocational expert to testify to sort out vocational questions." (Pl.'s Br. at 19).  Although that may be true, it is unhelpful to Plaintiff's case.  Having the authority to call a vocational expert and failing to call one when one is needed are two completely different concepts.  Here, the ALJ was under no obligation to call a vocational expert in his step four analysis; rather, the decision to call a vocational expert was left to his discretion.  In light of the above, Plaintiff has not shown that the ALJ abused his discretion by not calling a vocational expert.

---

most of the day.

## CONCLUSION

For the forgoing reasons, this Court finds that the ALJ's analysis was adequate and supported by substantial evidence.  Consequently, the Commissioner's decision denying Social Security disability benefits to Plaintiff Justina Nieves is affirmed.


**Dated:** July 21, 2005                                               s/ William J. Martini                    
                                                                                   **William J. Martini, U.S.D.J.**